# Exhibit A

Case 2:22-cv-09220 Document 1-1 Filed 12/20/22 Page 2 of 16 Page ID #:10

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Yvette Palazuelos

Electronically FILED by Superior Court of California, County of Los Angeles on 06/27/2022 03:45 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Covarrubias,Deputy Clerk

**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10990 Wilshire Boulevard, 8th Floor
Los Angeles, California 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiff and the proposed Class*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| BRIAN YOUNGBLOOD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM SERVICES LLC, a Delaware corporation,<br><br>Defendant. | Case No. 22STCV20876<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. |

- 1 -
CLASS ACTION COMPLAINT

Plaintiff Brian Youngblood ("Plaintiff"), through undersigned counsel, brings this Class Action Complaint against Defendant Amazon.com Services LLC ("Defendant" or "Amazon"), and alleges the following based upon information and belief, except as to allegations pertaining to Plaintiff, which are based upon personal knowledge.

**INTRODUCTION**

1. Plaintiff brings this action seeking injunctive and declaratory relief curtailing unlawful business practices related to consumer warranties for products sold by Defendant.

2. Under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations 16 CFR §§ 700.1, *et seq.*, retailers—like Defendant—must provide consumers with access to any written warranty for a product costing more than $15, prior to the point of sale.

3. The purpose of Magnuson-Moss's "Pre-Sale Availability Rule" is to ensure that consumers could get complete information about warranty terms and conditions. By providing consumers with a way of learning what warranty coverage is offered on a product *before* they buy, the Rule gives consumers a way to know what to expect if something goes wrong, and thus helps to increase customer satisfaction. Congress also wanted to ensure that consumers could compare warranty coverage before buying. By comparing, consumers can choose a product with the best combination of price, features, and warranty coverage to meet their individual needs. Thus, the Pre-Sale Availability Rule promotes competition on the basis of warranty coverage. By assuring that consumers can get warranty information, the Rule encourages sales promotion on the basis of warranty coverage and competition among companies to meet consumer preferences through various levels of warranty coverage.

4. To comply with Magnuson-Moss's Pre-Sale Availability Rule, a retailer must make the terms of a product's written warranty "readily available for examination by the prospective buyer" by either (1) displaying the warranty "in close proximity" to the product or (2) placing signs in prominent locations alerting the consumer that he or she may inspect product warranties upon request. This obligation extends to any product with a written warranty that costs more than $15. 16 C.F.R. § 702.3.

5. Despite these obligations under federal law, Defendant does not provide consumers with access to written warranties, prior to sale, in a manner that complies with the Pre-Sale Availability Rule.

6. Defendant's noncompliance has a self-serving motive: Defendant offers "protection plans" or extended warranties to consumers at the point of sale, which provide coverage that is duplicative of the free manufacturer's warranty that already comes with the product. If the consumer is not made aware of this warranty, or is prohibited from learning of the warranty's specific terms until after the point of sale, then he or she is more likely to buy Defendant's duplicative "protection plan."

7. Plaintiff, individually and on behalf of all other similarly situated residents of California, seeks injunctive and declaratory relief against Defendant for its violations of Magnuson-Moss. Specifically, Plaintiff seeks to require Defendant to provide California consumers with pre-sale access to product warranties as required by the Pre-Sale Availability Rule of Magnuson-Moss.

**PARTIES**

8. Plaintiff Brian Youngblood is a resident of Los Angeles County, California. In 2021, Plaintiff purchased a Vizio television from Defendant (the "Product"), which cost more than $15 and was subject to a warranty from the product's manufacturer. In the course of purchasing this product, Defendant did not make the product's warranty available to Plaintiff, or alert Plaintiff to the option of reviewing the product's warranty, prior to the point of sale in a manner compliant with the Pre-Sale Availability Rule.

9. Defendant Amazon.com Services LLC is a retailer headquartered in Washington. Defendant primarily offers consumer goods, including goods over $15 that are subject to manufacturer's warranties.

**JURISDICTION AND VENUE**

10. This Court has personal jurisdiction over Defendant because it purposefully directs its conduct at California, transacts business in California, has substantial aggregate contacts with California, engaged and is engaging in conduct that has and had a direct, substantial, reasonably

1    foreseeable, and intended effect of causing injury to persons in California, and purposely availed itself of the laws of California.

2    11. Defendant's activities in California gave rise to the claims identified herein, both suffered by Plaintiff and by members of the proposed Class. Defendant introduces its consumer products into the stream of commerce in California, including the products purchased by Plaintiff and the Class, each of which are to the disclosure requirements of the Pre-Sale Availability Rule, and Defendant's violation of said Rule gives rise to the claims of Plaintiff and the Class.

12. Venue is proper in this Court because Defendant has conducted business and entered into transactions in this County, and the conduct at issue occurred in, and/or emanated from, this County. Moreover, Plaintiff resides in this County.

**EXCLUSIVE STATE COURT JURISDICTION PURSUANT TO 15 U.S.C. § 2310**

13. Exclusive jurisdiction for this Action lies with this Court, pursuant to 15 U.S.C. § 2310.

14. Magnuson-Moss authorizes injured consumers to bring suit for "legal and equitable relief…in any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1)(A).

15. However, the Act imposes specific limitations on the exercise of jurisdiction by federal courts, stating that "no claim shall be cognizable" in federal district court "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id*. § 2310(d)(3)(A)-(C).

16. In this Action, Plaintiff seeks equitable and declaratory relief individually and on behalf all members of the Class, in the form of Defendant complying with the Pre-Sale Availability Rule, in addition to nominal damages. Under California law, nominal damages can be as low as $1 (*see, e.g., Avina v. Spurlock*, 105 Cal.Rptr. 198, 28 Cal.App.3d 1086 (Cal. App. 1972); *Belle Terre Ranch, Inc. v. Wilson*, 182 Cal.Rptr.3d 393, 232 Cal.App.4th 1468 (Cal. App. 2015), and in no event does Plaintiff or any member of the putative Class assert an individual claim for damages valued at $25 or greater. Neither of the requirements for federal jurisdiction set forth under § 2310(d)(3)(A) or § 2310(d)(3)(B) is satisfied.

17. Further, Plaintiff Brian Youngblood is the only named plaintiff in this action. Because there are not one hundred named plaintiffs in this action, the requirement for federal jurisdiction set forth under § 2310(d)(3)(C) is not satisfied.

18. Because none of the requirements for federal jurisdiction are satisfied under § 2310(d)(3), this Court has exclusive jurisdiction over this Action.

## COMMON FACTUAL ALLEGATIONS

**A.  Magnuson-Moss, the Pre-Sale Availability Rule, and Defendant's Non-Compliance.**

19. Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written warranties may be used when marketing products to consumers.[1] At its most fundamental, a warranty is a promise by the warrantor to stand behind its product. It is a statement about the integrity of the product and a commitment to correct problems if the product fails.[2]

20. In passing Magnuson-Moss, Congress wanted to encourage sellers to provide written warranties to assure consumers and to foster competition for the best products. Although sellers are not required to provide written warranties, many consumers will be skeptical of products that do not have one.

21. Magnuson-Moss creates multiple consumer protections related to warranties, and most deal with the substance of the warranties, themselves (i.e., what a warrantor must—and must not— include as a term or a representation). But Magnuson-Moss also recognizes the need of consumers to have access to warranties when evaluating whether or not to buy a given product, as the strength of the warranty is a meaningful data point when considering a new purchase. Consumers have a right to choose a product with the best combination of price, features, and warranty coverage to meet their individual needs. As Congressman Moss stated in support of the law:

> One of the most important effects of this bill will be its ability to relieve consumer frustration by promoting understanding and providing meaningful remedies. This bill should also foster intelligent consumer decisions by making warranties understandable. At the same time, warranty competition should be fostered since consumers would be able to judge accurately the content and differences between warranties and competing consumer products.

---

[1] 15 U.S.C. §§ 2301, *et seq.*
[2] FTC, "Businessperson's Guide to Federal Warranty Law" (available at https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law)

- 5 -
CLASS ACTION COMPLAINT

> Perhaps one of the potentially most important and long range effects of this bill resides in its attempt to assure better product reliability. The bill…attempts to organize the rules of the warranty game in such a fashion to stimulate manufacturers, for competitive reasons, to produce more reliable products. This is accomplished using the rules of the marketplace by giving the consumer enough information and understanding about warranties so as to enable him to look to the warranty duration of a guaranteed product as an indicator of the product reliability.[3]

22. The Senate report accompanying the introduction of Magnuson-Moss further clarified the need for and purpose of the law:

> When the use of a warranty in conjunction with the sale of a product first became commonplace, it was typically a concept that the contracting parties understood and bargained for, usually at arms length. One could decide whether or not to purchase a product with a warranty and bargain for that warranty accordingly. Since then, the relative bargaining power of those contracting for the purchase of consumer products has changed radically. Today, most consumers have little understanding of the frequently complex legal implications of warranties on consumer products. Typically, a consumer today cannot bargain with consumer product manufacturers or suppliers to obtain a warranty or to adjust the terms of a warranty voluntarily offered. Since almost all consumer products sold today are typically done so with a contract of adhesion, there is no bargaining power over contractual terms. [Magnuson-Moss] attempts to remedy some of the defects resulting from this gross inequality of bargaining power and return the sense of fair play to the warranty field that has been lost through the years as the organizational structure of our society has evolved. The warranty provisions of [Magnuson-Moss] are not only designed to make warranties understandable to consumers, but to redress the ill effects resulting from the imbalance which presently exists in the relative bargaining power of consumers and suppliers of consumer products.[4]

23. Thus, Magnuson-Moss has the "Pre-Sale Availability Rule," which ensures that consumers get complete information about warranty terms and conditions of a given product (of $15 or more), prior to purchase.[5] The Rule places distinct obligations both on warrantors *and* retailers (like Defendant).

24. Most relevant to the instant litigation, pursuant to the Rule, a "seller"[6] of any consumer product costing more than $15 and subject to a written warranty

---

[3] Federal Register/Vol. 40, No. 251/60168
[4] Senate Comm. On Commerce, Report on S. 356, S. Rep. No. 93-151, 93d Cong., 1st Sess. (1973), at 6.
[5] *See,* 16 C.F.R. § 702.3.
[6] Defined as "any person who sells or offers for sale for purposes other than resale or use in the ordinary course of the buyer's business any consumer product." 16 C.F.R. § 702.1(e).

> shall make a text of the warranty readily available for examination by the prospective buyer by:
>
> **(1)** Displaying it in close proximity to the warranted product (including through electronic or other means…), or
>
> **(2)** Furnishing it upon request prior to sale (including through electronic or other means…) and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request.[7]

25. While the Rule allows sellers to display or otherwise provide the text of a warranty "through electronic…means," the FTC has made clear that it is not enough for the seller merely to refer a customer to a product manufacturer's website. In allowing for the electronic presentment of warranty terms,

> Congress's intention…was not to disturb prospective purchasers' ability to obtain the full warranty terms at the point of sale, as envisioned by the Pre-Sale Availability Rule. While consumers with electronic devices and Internet connectivity may be able to review warranty terms at the point of sale by visiting the Web site that contains the warranty terms, not all consumers have such devices and Internet connectivity.[8]

26. Thus, all retailers, including Defendant, are obligated to have a mechanism by which the full terms of a product's written warranty can be viewed by a consumer—without said consumer resorting to his or her own Internet-enabled device—prior to the point of sale.

27. Defendant fails to satisfy this obligation. Indeed, virtually all of the products—if not every single product—sold on Defendant's platform are presented to the consumer without any access to the product's warranty, pre-sale. Instead, the first time the consumer is able to view the warranty is upon opening the product's packaging, after purchase.

28. For example, Defendant sells televisions from the manufacturer Vizio (which company manufactured the television purchased by Plaintiff). If a customer searches for a Vizio television (either through Amazon's search feature or through the URL prompt "Visit the Vizio Store"[9]), and then clicks the page for a specific Vizio television, he or she will see the page advertising the

---

[7] 16 C.F.R. § 702.3(a) ("Duties of seller").
[8] Federal Register/Vol. 81, No. 179/63666
[9] The "Vizio Store" on Amazon is available at the following URL: https://www.amazon.com/stores/page/67E887D0-633C-4927-9A8C-853FF149C10B?ingress=2&visitId=c198dd03-4cb8-42e9-8ec8-3894b01449ae&ref_=ast_bln

television, and will be provided the opportunity to purchase the television, in addition to an extended warranty sold through Asurion. *E.g.*:



Fig. 1 [10]

29. What the consumer will *not* be able to do, however, is find the terms of the manufacturer's warranty for this $1,000 purchase. Instead, if a consumer scrolls down to the "Product Information" portion of the webpage, and finds the section titled "Warranty & Support," he or she is informed that "Manufacturer's warranty can be requested from customer service. Click here to make a request to customer service."

---

[10] https://www.amazon.com/VIZIO-Chromecast-Variable-FreeSync-M75Q7-J03/dp/B094ML98NY?ref_=ast_sto_dp&th=1

- 8 -
CLASS ACTION COMPLAINT

> **Warranty & Support**
>
> Manufacturer's warranty can be requested from customer service. Click here to make a request to customer service.

Fig. 2[11]

30. When the customer clicks the link to make a request to customer service, he or she receives this message: "If you'd like a copy of the manufacturer's warranty for a product found on Amazon.com, you can contact the manufacturer directly or visit their website for more information. Manufacturer's warranties may not apply in all cases, depending on factors like the use of the product, where the product was purchased, or who you purchased the product from. Please review the warranty carefully, and contact the manufacturer if you have any questions."

> Ordering › Safety Information, Recalls, and Legal Notices ›
>
> **About Manufacturer's Warranties**
>
> If you'd like a copy of the manufacturer's warranty for a product found on Amazon.com, you can contact the manufacturer directly or visit their website for more information.
>
> Manufacturer's warranties may not apply in all cases, depending on factors like the use of the product, where the product was purchased, or who you purchased the product from. Please review the warranty carefully, and contact the manufacturer if you have any questions.

Fig. 3[12]

---

[11] *Id.*
[12] https://www.amazon.com/gp/help/customer/display.html/ref=help_search_1-1?nodeId=201596310

31. Thus, Amazon misleads customers when it states that warranties "can be requested from customer service" and further violates Magnuson Moss by referring consumers to the manufacturer's website. The FTC makes clear that this does not comply with Magnuson Moss's Pre-Sale Availability Rule, which instead requires online sellers to make the full text of a warranty available on their own website.[13]

### B. The Rise of "Add On" Warranties Offered by Retailers Like Defendant.

32. There is a financial incentive for Defendant's failure to provide consumers with product warranties. Defendant, like many other retailers, makes a significant amount of money by selling consumers "protection plans," or "extended warranties" for their products.

33. These plans are big business—according to a recent report, the global extended warranty industry generated $120.79 billion in 2019, and is projected to reach $169.82 billion by 2027, growing at a compound annual growth rate of 7.4% from 2020-2027.[14]

34. However, these plans are also largely unnecessary, as they provide coverage that is duplicative of the given product's existing warranty, at least for the life of the manufacturer's warranty.[15]

35. At present, Defendant partners with Asurion, among other insurers, to offer protection plans to consumers, and thus is disincentivized from alerting consumers to the warranty that already comes with their product free of charge. This makes Defendant's violation of the Pre-Sale Availability Rule all the more egregious.

---

[13] Federal Register/Vol. 81, No. 179/63665, n. 14 ("The requirement to make warranties available at the point of purchase can be accomplished easily with respect to online sales by, for example, using a clearly-labeled hyperlink, in close proximity to the description of the warranted product, such as 'get warranty information here' to lead to the full text of the warranty, and presenting the warranty in a way that it can be preserved, either by downloading or printing, so consumers can refer to it after purchase.")
[14] Yahoo, "Extended Warranty Market to Reach $169.82 Bn, Globally, by 2027 at 7.4% CAGR: Allied Market Research" (Jan. 24, 2022) (available at https://www.yahoo.com/now/extended-warranty-market-reach-169-083000210.html?guccounter=1).
[15] Beth Braverman, "Why You Should Steer Clear of Extended Warranties," Consumer Reports (Dec. 22, 2018) (available at https://www.consumerreports.org/extended-warranties/steer-clear-extended-warranties-a3095935951/) ("Two-thirds of in-store electronic shoppers and nearly three-quarters of appliance purchasers say that an associate has pitched one to them.")

**PLAINTIFF'S SPECIFIC ALLEGATIONS**

36. Throughout the last several years, Plaintiff purchased products on Defendant's platform. During this period, Plaintiff purchased at least one product costing more than $15 that was subject to a manufacturer's warranty.

37. One such product was the Product, which Plaintiff purchased from Defendant in 2021 for more than $15.

38. In the course of purchasing the Product(s), Defendant did not display product warranties in close proximity to the relevant product—indeed, consistent with the description in paragraphs 28-31, *supra*, Defendant did not display any warranty information.

39. Accordingly, Plaintiff was unable to access any warranty associated with the Product until after the point of sale.

40. Plaintiff cares about the substance of product warranties, and the terms of a written warranty would impact Plaintiff's purchasing decisions – *i.e.*, one product might be chosen over another if that product had a more expansive warranty.

41. Further, Plaintiff anticipates buying new products costing over $15 that are subject to manufacturer warranties in the future, and would consider purchasing said products from Defendant, but does not wish to have his rights under Magnuson-Moss thwarted by Defendant's failure to comply with the Pre-Sale Availability Rule.

**CLASS ALLEGATIONS**

42. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth.

43. Plaintiff brings this action on behalf of himself and all other similarly-situated persons as a class action pursuant to Code of Civil Procedure section 382.

44. Plaintiff seeks to represent a class composed of and defined as follows (the "Class"):

> All citizens of California purchased one or more products from Defendant that cost over $15 and that were subject to a written warranty.

45. Plaintiff reserves the right to modify or refine the Class definition based upon discovery of new information or in order to accommodate any concerns of the Court.

46. **Ascertainable Class:** The members of the Class are readily ascertainable. The Class definition identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice, alternatively proper and sufficient notice of this action may be provided to Class members through notice published in newspapers or other publications.

47. **Numerosity:** The proposed Class is so numerous that joinder of all members would be impracticable. The precise number of Class members is unknown at this time but can be readily determined from public records and Defendant's records. Plaintiff reasonably estimates that the Class is likely to include over a thousand members.

48. **Commonality and Predominance:** A well-defined community of interest in the questions of law or fact involving and affecting all members of the Class exists, and common questions of law or fact are substantially similar and predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class include, among others, the following:

   i. Whether Defendant's acts and practices complained of herein violate Magnuson-Moss; and
   ii. the appropriate injunctive relief to ensure Defendant no longer violates the Pre-Sale Availability Rule.

49. **Typicality:** Plaintiff is a member of the Class he seeks to represent. Plaintiff's claims are typical of the Class members' claims because they all were injured as a result of Defendant's violation of Magnuson-Moss.

50. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class he seeks to represent and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent him and the Class. There are no conflicts between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

51. To prosecute this case, Plaintiff has chosen the undersigned law firm, which is very experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

52. **Superiority.** A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

  i. Joinder of all class members would create extreme hardship and inconvenience for class members as they reside throughout the state;

  ii. Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake. As a result, individual class members may have no interest in prosecuting and controlling separate actions;

  iii. There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

  iv. The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

  v. Individual suits would not be cost effective or economically maintainable as individual actions; and

  vi. This action is manageable as a class action.

53. The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants. Class members can be readily identified using records and information kept by Defendant in the usual course of business and within its control.

54. **Final Declaratory or Injunctive Relief.** Plaintiff also satisfies the requirements for maintaining a class seeking declaratory and/or injunctive relief. Defendant has acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

**CAUSE OF ACTION**
**(Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq.*)**

55. Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

56. Plaintiff and Class members are "consumers" as defined in MMWA, 15 U.S.C. § 2301(3).

57. Defendant is a "seller" as defined in MMWA, 16 C.F.R. § 702.1(e).

58. Defendant sells products with warranties that are "written warranties" as defined in MMWA, 15 U.S.C. § 2301(6); 16 C.F.R. § 702.1(c).

59. Defendant sells products that are "consumer products," as defined in MMWA, 15 U.S.C. § 2301(1); 16 C.F.R. § 702.1(b).

60. Consistent with, *inter alia*, 16 C.F.R. § 702.3, as a seller of consumer products with written warranties, for all products costing more than $15 Defendant must either display product warranties in close proximity to the relevant product, or else place signs reasonably calculated to elicit the prospective buyer's attention, in prominent locations, advising consumers of the availability of warranties upon request. 16 C.F.R. § 702.3(a). In direct violation of Magnuson-Moss's Pre-Sale Availability Rule, Defendant does neither of these things.

61. Plaintiff, Class members, and members of the general public have been damaged as a result of Defendant's unfair, unlawful, and fraudulent conduct alleged herein.

62. Because Plaintiff and the Class members have purchased, would like to, and are likely to purchase products from Defendant over $15, Plaintiff and Class members are entitled to injunctive relief and corresponding declaratory relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a. Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

b. Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

c. Award Plaintiff and the Class nominal damages;

d. Enter judgment against Defendant for all injunctive, declaratory, and other equitable relief sought;

e. Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

f. Grant such other legal and equitable relief as the Court may deem appropriate.

Dated: June 27, 2022

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

By: _/s/ GWade_
Gillian L. Wade, Esq.
Sara D. Avila, Esq.
Marc A. Castaneda, Esq.

*Attorneys for Plaintiff and the Proposed Class*